UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER KAHN,

       Plaintiff,                        Case No. 14-13333

v.                                         Hon. Gerald E. Rosen

TARGET CORPORATION,

       Defendant.

_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        May 2, 2016

PRESENT: Honorable Gerald E. Rosen
United States District Judge

## I. INTRODUCTION

This diversity "slip and fall" action is presently before the Court on the motion for summary judgment filed by Defendant Target Corporation. On March 29, 2014, Plaintiff Jennifer Kahn slipped and fell in a hallway directly outside the women's bathroom at a Target store located in Farmington Hills, Michigan. Defendant now moves for summary judgment, arguing that there is no evidence that it created, knew of, or was on notice of the condition that allegedly caused

Plaintiff to fall — namely, water on the floor — and that it therefore did not breach a duty owed to Plaintiff by failing to warn her of a dangerous condition.

Defendant's motion has been fully briefed by the parties. Having reviewed the parties' briefs and accompanying exhibits, as well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion sets forth the Court's rulings on this motion.

## II. FACTUAL BACKGROUND

On March 29, 2014, Plaintiff Jennifer Kahn went to a Target store located on Grand River Avenue in Farmington Hills, Michigan. It was a clear day with no rain or snow. (Defendant's Motion for Summary Judgment, Ex. B, Plaintiff's Dep. at 30.) Upon entering the store, Plaintiff proceeded directly to the women's restroom, which was located down a hallway near the entrance to the store. (*See id.* at 31.) Plaintiff testified that the hallway appeared to be clear and uncluttered, with no water on the floor and no caution signs within her view. (*See id.* at 31, 38.) In addition, Plaintiff did not see any Target employees in the hallway as she approached the restroom. (*See id.* at 31.) She entered the bathroom without

incident, and then exited approximately five minutes later. (*See id.* at 32-33.)

Upon exiting the restroom, Plaintiff slipped and fell in the hallway immediately adjacent to the bathroom entrance. (*See id.* at 32-33.) She landed flat on her back and hit her head on the floor. (*See id.* at 32-34.) Plaintiff testified that she was "being cautious" as she exited the restroom, since she had recently undergone back surgery. (*Id.* at 35, 42.) She further testified that there were no Target employees or other customers in the hallway when she fell, nor did she see a wet floor sign in the area. (*See id.* at 36, 38.) Although Plaintiff could not recall seeing anything on the floor where she fell and did not notice any sort of puddle, she surmised that she had slipped on a clear liquid such as water, since her pant leg was wet but the substance on her pants had no color and was not thick or slushy. (*See id.* at 34-37.)

As she lay on the floor after her fall, Plaintiff looked around and yelled for help. (*See id.* at 37.) When no one responded, she stood up and managed to make her way down the hallway toward the front of the store, where she caught the attention of a woman, Raine Pavlichek, who worked at the Starbucks counter located near the store entrance. (*See id.*; *see also* Plaintiff's Response, Ex. D, Pavlichek Dep. at 26.) Plaintiff informed Ms. Pavlichek that she "couldn't stand up" and was suffering from "excruciating pain in [her] back," and she then

slumped against a wall and slid slowly to the floor. (Plaintiff's Dep. at 39-40.) Ms. Pavlichek immediately called for security and then focused her attention on Plaintiff, providing her with a plastic bag in case she became sick and a paper towel to place under her head. (*See* Pavlichek Dep. at 26-27.)[1]

Three Target employees responded to Ms. Pavlichek's call for assistance. The first employee to arrive at the scene, Jeronda Williams, asked Plaintiff what had happened and if she was okay, and Plaintiff responded that she had fallen outside the restroom. (*See* Plaintiff's Response, Ex. G, Williams Dep. at 18-19.) Ms. Williams then radioed for the leader on duty to report to Plaintiff's location next to the Starbucks counter. (*See id.* at 19.) Once other employees arrived to assist Plaintiff, Ms. Williams checked the hallway where Plaintiff had fallen, but she did not see any debris, water, or other liquid on the floor, nor did she see any caution or wet floor signs in the hallway. (*See id.* at 20-21.) In addition, Ms. Williams testified that she radioed the cart attendant, Ke'Yuan Rosemond, to ask whether he had done any mopping in the hallway that day, and Mr. Rosemond

---

[1] Ms. Pavlichek testified that about 30 or 45 minutes after Plaintiff was taken from the store by paramedics, she inspected the area where Plaintiff reported that she had fallen. (*See id.* at 29-32.) Ms. Pavlichek stated that she did not see anything on the floor that could have caused Plaintiff to fall, nor did she observe any wet floor signs in the hallway where Plaintiff had fallen. (*See id.* at 31-32.)

responded that he had not.[2]

The store team leader and leader on duty, Kimberly Kennedy, also reported to the scene and asked Plaintiff about the incident, and Plaintiff responded that she had fallen and hurt her back. (*See* Plaintiff's Response, Ex. B, Kennedy Dep. at 22-23.) Ms. Kennedy then asked Plaintiff if she needed an ambulance, and when Plaintiff responded that she did, Ms. Kennedy instructed another Target employee to call for one. (*See id.* at 23.) As she waited with Plaintiff for the paramedics to arrive, Ms. Kennedy asked Plaintiff the questions called for in a "Guest Incident Report" used by Target, and this report reflects Plaintiff's responses that she fell in the hallway leading to the restroom and that this fall was caused by "something wet on [the] ground." (Defendant's Motion, Ex. A, Guest Incident Report; *see also* Kennedy Dep. at 26-27, 34-37.)[3]

After Plaintiff was taken from the store by paramedics, Ms. Kennedy inspected the area where Plaintiff had fallen, and she testified that the floor in this area was clean and dry, that there was no indication that the floor had recently

---

[2]Mr. Rosemond likewise testified at his deposition that on the date of Plaintiff's slip and fall, he had not mopped the hallway leading to the restrooms. (*See* Defendant's Reply, Ex. F, Rosemond Dep. at 51.)

[3]According to Plaintiff, Ms. Kennedy noticed that her pants were wet, (*see* Plaintiff's Dep. at 43), but Ms. Kennedy nonetheless checked "no" on the portion of the incident report inquiring whether the guest's clothes were "wet or damaged," (*see* Guest Incident Report at 1).

been mopped, and that she did not see any cones or warning signs alerting customers to a wet floor. (*See* Kennedy Dep. at 40-43.) Ms. Kennedy also asked two other Target employees, Ms. Williams and Brandon Joyce, to confirm that the hallway where Plaintiff fell was dry and free of debris. (*See id.* at 40.) She then went to the store's asset protection office to complete her investigative report and to secure statements from the other individuals who had responded to the incident. (*See id.* at 40-41.)

The third Target employee who responded to Ms. Pavlichek's call for assistance was team leader Brandon Joyce. Because Mr. Joyce was in training for a senior team leader position, he remained in the area and observed Ms. Kennedy as she spoke with Plaintiff regarding her fall and injuries, but he did not have any direct interactions with Plaintiff. (*See* Plaintiff's Response, Ex. E, Joyce Dep. at 11-12.) Mr. Joyce also glanced around the area where Plaintiff had fallen, but he did not notice any wet spots or debris that could have caused the incident. (*See id.* at 18.) He did, however, observe a wet floor sign in the hallway near the janitor's closet, and he surmised that there "could have been a spill" in the area or that a cart attendant could have put the sign out after mopping the area. (*Id.* at 19-20.) According to Mr. Joyce, it was not Target's usual practice to leave wet floor signs out on store property or to store these signs in the hallway near the guest

bathrooms; rather, he stated that these signs typically were placed in the area of a spill or where a floor had been mopped. (*See id.* at 20-21.)[4]

Plaintiff alleges that she sustained multiple injuries, including a lumbar fracture, in her March 29, 2014 fall at the Target store, and that she continues to experience pain in her back, legs, hip, and neck as a result of this fall. Accordingly, in a suit filed in state court on April 30, 2014 and removed to this Court on August 27, 2014, Plaintiff has asserted a state-law claim of negligence against Defendant Target Corporation, alleging that Defendant breached a duty of care owed to Plaintiff as a business invitee at Defendant's store in Farmington Hills, Michigan.

## III. ANALYSIS

### A. The Standards Governing Defendant's Motion

Through the present motion, Defendant seeks summary judgment in its favor on Plaintiff's state-law claim of premises liability. Under the pertinent

---

[4]The cart attendant, Ke'Yuan Rosemond, also was asked about Target's use and storage of wet floor signs, but his testimony was somewhat more equivocal. He initially testified, like Mr. Joyce, that if there was a wet floor sign in the area of the hallway where Plaintiff fell, this would necessarily mean either that this area had been mopped or that there was a spill. (*See* Plaintiff's Response, Ex. F, Rosemond Dep. at 26-27.) He later stated, however, that Target regularly kept one or more wet floor signs in the hallway near the restrooms for ready access by its employees, while additional wet floor signs were stored in a maintenance closet located along this hallway. (*See id.* at 38-39.)

Federal Rule governing this motion, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be

8

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party." *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

**B.    Plaintiff Has Raised Issues of Fact as to Whether One of Defendant's Employees Created an Unsafe Condition That Caused Plaintiff's Fall and Resulting Injury.**

Under well-settled Michigan law, a plaintiff must establish four elements in support of a claim of negligence: (1) that the defendant owed a legal duty to the plaintiff; (2) that the defendant breached this duty; (3) that the plaintiff suffered damages; and (4) that the defendant's breach was a proximate cause of the damages suffered. *See Schultz v. Consumers Power Co.,* 443 Mich. 445, 506 N.W.2d 175, 177 (1993). In this case, Plaintiff states without contradiction that Defendant owed her a duty as a "business invitee" of the Target store she was visiting at the time of her fall. *See Stitt v. Holland Abundant Life Fellowship,* 462 Mich. 591, 614 N.W.2d 88, 92 (2000). The issue before the Court, then, focuses on the second element of Plaintiff's claim of negligence — namely, whether Defendant breached a duty owed to Plaintiff as a business invitee.

9

A business owner is not an absolute "insurer of the safety of invitees," but instead owes only a duty "to exercise reasonable care for their protection." *Williams v. Cunningham Drug Stores, Inc.,* 429 Mich. 495, 418 N.W.2d 381, 383 (1988) (internal quotation marks and footnote with citations omitted). More specifically, a store owner such as Defendant here is liable for injury resulting from an unsafe condition on the premises only if: (1) the condition is caused by the active negligence of the store owner or its employees; (2) the condition is known to the owner; or (3) the condition "is of such a character or has existed a sufficient length of time that [the owner] should have had knowledge of it." *Serinto v. Borman Food Stores,* 380 Mich. 637, 158 N.W.2d 485, 486 (1968) (internal quotation marks, emphasis, and citation omitted); *see also Whitmore v. Sears, Roebuck & Co.,* 89 Mich. App. 3, 279 N.W.2d 318, 320-21 (1979). In other words, a business owner must have "either created the dangerous condition or had actual or constructive notice of the condition." *Sparks v. Wal-Mart Stores, Inc.,* 361 F. Supp.2d 664, 668 (E.D. Mich. 2005). It is Plaintiff's burden to produce sufficient evidence to establish a breach of this standard of care. *See Whitmore,* 279 N.W.2d at 321.

In this case, Plaintiff argues that the evidence in the record would permit the inference that one of Defendant's employees created the dangerous condition that

caused her to slip and fall in Defendant's store. First, Plaintiff points to her own testimony as giving rise to the inference that she slipped on a wet substance on the floor in the hallway outside of the women's restroom, where she testified that she "slipped on something" in this hallway and then discovered that her "pant leg was wet" after her fall. (Plaintiff's Dep. at 34.) Although Defendant suggests that this claim of a wet spot on the floor rests upon a mere "*assumption* that liquid was on the floor," (Defendant's Reply Br. at 3 (emphasis in original)), Plaintiff's testimony that she observed a clear liquid on her pant leg after her fall removes the cause of this fall from the realm of speculation, and instead serves as circumstantial evidence of a condition that could have led Plaintiff to slip and fall.

  Nonetheless, Defendant insists that the record is bereft of evidence that it had actual or constructive notice of the condition suggested by Plaintiff's deposition testimony. Again, however, the Court agrees with Plaintiff that the record, when viewed in a light most favorable to her as the non-moving party, would support the inference that one of Defendant's employees created the dangerous condition that caused Plaintiff's slip and fall. In particular, Plaintiff points to the testimony of one of Defendant's employees, Brandon Joyce, that upon inspecting the hallway in which Plaintiff fell, he observed a wet floor sign in the area, leading him to believe that there had been a spill in this hallway or that it

11

had recently been mopped. (*See* Plaintiff's Response, Ex. E, Joyce Dep. at 19-20.) In addition, Mr. Joyce and the Starbucks employee who initially assisted Plaintiff after her fall, Raine Pavlichek, both testified that wet floor signs were not regularly kept in this hallway, and that the presence of such a sign was indicative of a wet floor due to a spill or routine cleaning. (*See id.* at 20-21; *see also* Plaintiff's Response, Ex. D, Pavlichek Dep. at 31-32.)[5] Finally, another of Defendant's employees, Ke'Yuan Rosemond, testified that a Target employee would remain in the area in the event of a spill, (*see* Rosemond Dep. at 26-27), and the leader on duty at the time of Plaintiff's fall, Kimberly Kennedy, similarly testified that a Target employee would "block . . . off" the area around a spill until it was cleaned up, (*see* Plaintiff's Response, Ex. B, Kennedy Dep. at 49).

The totality of this testimony, viewed in a light most favorable to Plaintiff, supports the inference that one of Defendant's employees had recently mopped the hallway where Plaintiff slipped and fell. According to this testimony, the wet

---

[5]As noted earlier, the testimony of the cart attendant on duty on the day of Plaintiff's slip and fall, Ke'Yuan Rosemond, could also be viewed as supportive of this proposition — namely, that if a wet floor sign were present in the area of Plaintiff's fall, this would mean either that the area had been mopped or that there had been a spill. (*See* Plaintiff's Response, Ex. F, Rosemond Dep. at 26-27.) Mr. Rosemond later testified, however, that there was "always a wet floor sign" kept in this hallway, so that store employees could quickly retrieve a sign without "run[ning] all the way to the [maintenance] closet" in the event of a spill in the area. (*Id.* at 38-39.) For present purposes, this apparent inconsistency in Mr. Rosemond's testimony must be resolved in favor of Plaintiff as the non-moving party.

floor sign that Mr. Joyce observed in the hallway was suggestive of either mopping or a spill, and the record lacks any indicia of a spill, such as evidence that a Target employee remained in the vicinity or blocked off the area. To be sure, the cart attendant on duty, Mr. Rosemond, has denied that he mopped the hallway leading to the restrooms on the date of Plaintiff's slip and fall. (*See* Rosemond Dep. at 51.) Contrary to Defendant's assertion, however, Plaintiff's opposition to Defendant's present motion does not rest upon the bare hope that a trier of fact might disbelieve Mr. Rosemond's testimony on this point. Rather, Plaintiff relies on affirmative testimony and other evidence that, if credited by the trier of fact, would lead to a factual finding that diverges from the account given by Mr. Rosemond at his deposition. It must be left to the trier of fact to determine the weight to be given to this evidence, and to choose among the competing accounts of Plaintiff's fall that are supported by the record.

As Plaintiff observes, the courts have held under analogous facts that a claim of premises liability should be heard and decided by a jury, and not by the court as a matter of law. In *Vella v. Hyatt Corp.,* 166 F. Supp.2d 1193, 1195 (E.D. Mich. 2001), for example, the plaintiff fractured her hip when she slipped and fell as she entered an elevator in the defendant's hotel. The plaintiff admitted at her deposition that she did not "know how she fell or what made her fall," but she

13

noticed that the elevator floor was "very slippery" and that her stockings were "soaked" after her fall. *Vella,* 166 F. Supp.2d at 1199. In light of this testimony, the court rejected the defendant's contention that the plaintiff's claim of negligence rested upon pure conjecture, explaining that the record provided a sufficient basis for attributing the plaintiff's fall to a "wet and slippery floor." 166 F. Supp.2d at 1200; *see also Brandt v. Starwood Hotels & Resorts Worldwide, Inc.,* No. 02-10285, 2004 WL 2958661, at *8 (E.D. Mich. Dec. 14, 2004) (finding that the plaintiff had produced sufficient "circumstantial evidence" of the cause of her fall, where she testified that her foot "started to slip forward" as she descended the steps of a hotel operated by the defendant, and where she discovered "water on her pant leg after the fall and observ[ed] . . . water on the steps near where she fell"). The court further concluded that there was sufficient evidence that the defendant "either created or should have known of the hazardous condition" that allegedly caused the plaintiff to fall, where the defendant "ha[d] the [elevator] floors cleaned and/or polished on a nightly basis," and where the plaintiff's expert opined that the elevator floor "was made of material that created a walking surface which was dangerously slippery." *Vella,* 166 F. Supp.2d at 1200-01.

Similarly, in *Berryman v. K Mart Corp.,* 193 Mich. App. 88, 483 N.W.2d 642, 644 (1992), the plaintiff slipped and fell in the defendant's store, noticing

after she fell "that the floor was wet and that the 'wet streaky marks on the floor' were consistent with freshly mopped floors she had seen in the past." The plaintiff further testified that "there were no signs or warnings that the floor was wet." *Berryman,* 483 N.W.2d at 646. In the course of discovery and again at trial, the defendant "admitted that its premises were maintained solely by its employees." 483 N.W.2d at 644. The court found that this evidence was sufficient to support a jury's finding "that [the] defendant caused the condition that led to [the plaintiff's] fall," where the record gave rise to a "logical inference" that the "defendant's employees had mopped the floor on which [the plaintiff] had fallen and that they had failed to post adequate warning signs." 483 N.W.2d at 646.

This same conclusion is warranted under the comparable record presented here. Plaintiff's own testimony, if credited by the trier of fact, would support a finding that her slip and fall was caused by a wet spot or substance on the floor of the hallway leading to the women's restroom. Moreover, in light of the testimony of one or more of Defendant's employees (i) that a wet floor sign was seen in the area where Plaintiff fell, and (ii) that the placement of this sign suggested that the area had recently been mopped, a trier of fact could permissibly conclude that one of Defendant's employees created the dangerous condition that caused Plaintiff's fall by mopping the area where she fell. It follows that issues of fact preclude an

15

award of summary judgment in Defendant's favor on Plaintiff's state-law claim of negligence.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's April 23, 2015 motion for summary judgment (docket #16) is DENIED.

                                            s/Gerald E. Rosen
                                            United States District Judge

Dated:  May 2, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 2, 2016, by electronic and/or ordinary mail.

                                            s/Julie Owens
                                            Case Manager, (313) 234-5135